UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MELISSA ULLMO,** | ) | Case No. 1:15 CV 822 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Judge Dan Aaron Polster** |
| vs. | ) | |
| | ) | |
| **OHIO TURNPIKE AND** | ) | |
| **INFRASTRUCTURE COMMISSION,** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

Pending before the Court is Defendant Ohio Turnpike and Infrastructure Commission's (the "Commission") Motion to Dismiss Plaintiff Melissa Ullmo's Complaint. **(ECF No. 7)**. For the following reasons, the Motion to Dismiss is GRANTED in part, and the case is remanded to state court.

**I.**

The Commission is responsible for the maintenance of the Ohio Turnpike, a 241-mile long highway through northern Ohio comprising of portions of Interstates 90, 80, and 76. On January 1, 2014, the Commission increased the amount that drivers have to pay to use the Ohio Turnpike ("Turnpike"). Plaintiff alleges that the toll increase is unlawful because money from the toll increase, specifically, $930 million, will be used to fund projects that are unrelated to the maintenance and operation of the Ohio Turnpike. These projects include improvements on roads and "other unrelated infrastructure projects" (hereinafter referred to as "Infrastructure Projects") (ECF No. 1, Complaint ("Comp.") at ¶ 26).

On March 20, 2015, Plaintiff filed an action in the Cuyahoga County Court of Common Pleas on behalf of herself and all other Turnpike users who have paid tolls since January 1, 2014. The Complaint alleges that the toll increase violates the Commerce Clause of the United States Constitution (Claims One and Two), the right to travel under both the United States and Ohio Constitution (Claims Four and Five, respectively) and the right to Equal Protection under both the United States and Ohio Constitution (Claim Seven). Plaintiff also alleges that it is unlawful for the Commission to retain the money from the toll increase (Claim Three) and that the toll increase is an unlawful tax or user fee under Ohio law (Claim Six).

On April 27, 2015, the Commission removed the case to federal court on the basis of federal question jurisdiction **(ECF No. 1)**, and on June 6, 2015, it filed a Motion to Dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) **(ECF No. 7)**. On July 15, 2015, Plaintiff filed a brief opposing the Motion to Dismiss **(ECF No. 10)** and a Motion to Remand Claims Six and Seven of the Complaint to state court **(ECF No. 11)**.

**II.**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S Ct. at 1949 (citing *Twombly*, 550 U.S. at 55). The plausibility requirement is not a heightened pleading requirement, but "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.*

**III.**

**1. Dormant Commerce Clause**

The Commission moves to dismiss Plaintiff's Commerce Clause Claims on the ground that Plaintiff has not stated a claim under the dormant Commerce Clause.[1] The dormant Commerce Clause, as explained by the Sixth Circuit in *American Beverage Ass'n v. Snyder,* derives from Congress' power to regulate interstate commerce under the Commerce Clause:

> Under the Commerce Clause, Congress has the power "[t]o regulate Commerce with foreign Nations, and among the several States...." U.S. Const., art. I, § 8, cl. 3. "We have interpreted the Commerce Clause to invalidate local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of State." *C & A Carbone, Inc., v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 [...] (1994). However, "[t]he [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 [...] (1994). "The Clause, by negative implication, restricts the States' ability to regulate interstate commerce." *Huish Detergents, Inc. v. Warren Cnty., Ky.*, 214 F.3d 707, 712 (6th Cir.2000). "The dormant Commerce Clause is driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.' " *Dept. of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 [...] (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–74 [...] (1988)).

735 F. 3d 362, 369 (6th Cir. 2013).

The parties contend that the Court, in determining whether Plaintiff has stated a claim under the dormant Commerce Clause, should apply the three-part test set forth by the Supreme Court in *Northwest Airlines, Inc. v. County of Kent, Mich.,* 510 U.S. 355, 114 S.Ct. 855 (1994). In *Northwest Airlines,* the Court ruled that an airport user fee does not violate the dormant

---

[1] The Commission also moves to dismiss Plaintiff's Commerce Clause claims purusant to the market-participant doctrine. Because the Court finds that the Plaintiff has failed to state a claim under the Commerce Clause, it does not address the Commission's market participant arguments.

Commerce Clause "if it (1) is based on some fair approximation of the use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Id.* at 369.  This three-part inquiry was adapted from the Supreme Court's ruling upholding airport user fees in *Evansville-Vanderburgh Airport Authority Dist. v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct. 1349 (1972).  The Court finds that this three-part inquiry applies to the facts of this case.

While *Evansville* and *Northwest Airlines* involved airport user fees, not highway tolls, the Supreme Court in *Evansville* began its analysis by reviewing a long line of its precedents pertaining to highway tolls.  *Id.* at 715-16.  After discussing these cases, the Court concluded that states are permitted to impose highway tolls so long as the tolls "reflect a uniform, fair and practical standard relating to public expenditures."  *Id.*  The Court then applied the above three-part inquiry to the airport user fee that was at issue in the case, and determined that the fee did not violate the Commerce Clause.

Other courts have also applied the *Northwest Airlines* test to evaluate the constitutionality of a highway toll.  *See e.g., Selevan v. New York Thruway Auth.,* 584 F. 3d 82, 96-97 (2009); *Doran v. Mass. Turnpike Auth.*, 348 F.3d 315, 320-21 (1st Cir. 2003).  Thus, the Court will apply the three-part inquiry set forth in *Northwest Airlines* to determine whether Plaintiff has stated a claim under the Commerce Clause.

Because laws that discriminate against interstate commerce are "*per se* invalid and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives," the Court considers this prong first.  *American Beverage Ass'n v. Snyder*, 735 F.3d 362, 369-70 (6th Cir. 2013) (internal quotation marks and

citation omitted). The Supreme Court has explained that "[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C&A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 390, 114 S.Ct. 1677 (1994). Accordingly, a state regulation "discriminates" against interstate commerce if it "impose[s] commercial barriers or discriminates against an article of commerce by reason of its origin or destination out of State." *Id.* Whereas, regulations that "treat in-state private business interests exactly the same as out-of-state ones, do not discriminate against interstate commerce for purposes of the dormant Commerce Clause." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mg. Auth.,* 550 U.S. 330, 345, 127 S.Ct. 1786 (2007).

Here, Plaintiff does not allege that out-of-state business interests are treated any differently from in-state ones, nor does the Complaint allege facts from which the Court can infer that the increased toll discriminates against interstate commerce. Plaintiff alleges that the Commission increased the toll amount for *all* users of the Turnpike. Thus, as Defendants point out, in-state users of the Turnpike and out-of-state users are treated exactly the same under the Commission's toll schedule. Therefore, the Court finds that Plaintiff has failed to allege that the Commission's toll increase discriminates against interstate commerce.

As to the first *Northwest Airlines* factor, a toll or fee must "'reflect a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed.'" 510 U.S. at 369 (quoting *Evansville,* 405 U.S. at 716-717). Under this formula, "it is the amount of the [toll], not its formula, that is of central concern." *Evansville,* 405 U.S. at 716. The Complaint alleges that "there is no correlation between the increased tolls paid by the Plaintiff and her use of the

-5-

non-Turnpike projects being funded with these additional revenues." (Comp at ¶ 27). However, this allegation is merely a legal conclusion. Plaintiff has not alleged any facts from which the Court can infer that the toll increase is not a fair approximation of use of the Infrastructure Projects, *i.e.,* the "facilities" that Plaintiff alleges the toll increase is intended to benefit. In fact, the Complaint does not even allege the amount of the toll (or the amount of the toll increase) that users of the Turnkpike are charged.

Finally, the second *Northwest Airlines* factor requires that a toll not be "excessive in relation to the benefits conferred." 510 U.S. at 369. As with the first *Northwest Airlines* factor, Plaintiff has failed to plead any facts from which the Court can infer that the toll increase is "excessive in relation to the benefits conferred." Rather, Plaintiff alleges that the increased toll violates the Commerce Clause because $930 million of the money raised from the increased toll will be used to fund non-Turnpike endeavors. However, as the Commission points out, any project funded by the increased toll must have "a transportation-related nexus with and relationship to the Ohio turnpike system and the Ohio turnpike and infrastructure system." R.C. 5537.18 (A). Furthermore, R.C. 5537.18 (A) sets forth five criteria that the Commission must consider in determining whether an Infrastructure Project has the required nexus.[2] The five criteria that the Commission must consider in making that determination include an Infrastructure Project's impact on traffic density and flow on the Turnpike, impact on

---

[2] (1) A physical proximity of the infrastructure project to and a direct or indirect physical connection between the infrastructure project and the Ohio turnpike system; (2) The impact of the infrastructure project on traffic density, flow through, or capacity on the Ohio turnpike system; (3) The impact of the infrastructure project on the Ohio turnpike system toll revenue or other revenues; (4) The impact of the infrastructure project on the movement of goods and services on or in the area of the Ohio turnpike system; and (5) The enhancement or improvement by and through the infrastructure project of access to, use of, and egress from the Ohio turnpike system and access to and from connected areas of population, commerce, and industry.

movement of goods on the Turnpike, and enhancement of access to or egress from the Turnpike.

Thus, the Commission's determination of a transportation-related nexus ensures that an Infrastructure Project benefits Turnpike users. Plaintiff never alleges in her Complaint or in her opposition brief that the Commission failed to follow R.C. 5537.18 (A). Nor does Plaintiff allege facts from which the Court can infer that the toll increase is excessive in relation to the benefits conferred by a project that has a "transportation-related nexus .... with the Ohio turnpike system." *See* R.C. 5537.18 (A).

Plaintiff further alleges that "[w]ith respect to all of the infrastructure projects that the increased tolls will be funding, Turnpike users will receive no greater benefit from those projects than other motorists in Ohio." (Comp. at ¶ 28). However, as Defendants point out, the fact that non-tollpayers benefit from the infrastructure projects "is not itself evidence that [tollpayers] did not benefit reasonably from [the Infrastructure Projects]." *Angus Partners,LLC v. Walder,* 52 F. Supp. 3d 546, 570 (S.D.N.Y. 2014). This is because "the benefits that flow to non-customers do not diminish the benefits received by those who pay the ... tolls." *Id.* (citation omitted).

In her brief opposing the Commission's Motion to Dismiss, Plaintiff does not argue that the increased toll discriminates against interstate commerce. Rather, Plaintiff focuses on the first two prongs of the *Northwest* test –fair approximation of use and excessiveness. In arguing that the increased toll fails these two prongs, Plaintiff relies on the Second Circuit's decision in *Bridgeport & Jefferson Steamboat Co. v. Bridgeport Port Auth.,* 567 F.3d 79 (2d Cir. 2009). In *Bridgeport,* a ferry company and its passengers challenged a passenger fee assessed by a port

authority to all users of the ferry. *Id.* at 81. The passenger fee was used to fund all of the port authority's operating costs, including, many projects that were not "functionally related" to the ferry, such as, economic-development projects and a project to reduce traffic on I-95. *Id.* at 84. As a result, the court determined that the passenger fee violated the Commerce Clause.

*Bridgeport* is distinguishable from the facts in this case. Here, unlike the projects at issue in *Bridgeport,* all of the projects funded by the increased toll must be "functionally related" to the Ohio Turnpike, as required by R.C. 5537.18 (A).

Accordingly, because Plaintiff has not stated a claim under the Commerce Clause, the Court dismisses Claims One, Two and Three[3] of the Complaint.

**2. Right to Travel**

In Claim Four of the Complaint, Plaintiff alleges that the increased toll amounts to a violation of the right to interstate travel under the Commerce Clause and Privileges and Immunities Clause of the Fourteenth Amendment. Both the Supreme Court and the Sixth Circuit have recognized a protected right to interstate travel. *League of United Am. Citizens v. Bredsen,* 500 F.3d 523, 535 (6th Cir. 2007) (citing *Saenz v. Roe,* 526 U.S. 489, 500, 119 S.Ct. 1518 (1999)). The Supreme Court has recognized at least three components to the right to travel: "the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be

---

[3] Plaintiff brings an unjust enrichment claim (Claim Three) based on the Commission's alleged violation of the Commerce Clause. The Complaint alleges that "it is unjust for the Defendant to retain [the toll payments] because it collected that benefit in violation of the Commerce Clause and state law." (Comp. at ¶ 61). Because the Court finds that Plaintiff has not stated a claim under the Commerce Clause, Plaintiff's unjust enrichment claim fails.

treated like other citizens of that State." *Saenz,* 526 U.S. at 500. However, "minor burdens impacting interstate travel, such as toll roads, do not constitute a violation of that right..." *Miller v. Reed,* 176 F.3d 1202, 1205 (9th Cir. 1999); *see also Town of Southold vs. Town of East Hampton,* 477 F.3d 38, 54 (2nd Cir. 2007) (ruling that "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right" (internal quotation marks and citation omitted)). Here, Plaintiff does not allege facts from which the Court can infer that the increased toll amounts to a significant restriction on her, and other Turnpike users', right to travel. For instance, Plaintiff does not allege that the increased toll has had a significant financial impact on her. In fact, as noted above, Plaintiff does not even allege the amount of the toll increase.

Furthermore, Plaintiff has not alleged facts from which the Court can infer that either of the three components of the right to travel are implicated in this case. The Sixth Circuit, in analyzing the three components of the right to travel, has explained that "[a] state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *Bredsen,* 500 F.3d at 535 (citation omitted).

The first component protects the right to cross state borders. *Saenz,* 526 U.S. at 501. This component is implicated when a regulation imposes an obstacle to entry into a state. *Id.* Here, Plaintiff does not allege that the increased toll prevents people from entering into Ohio, nor does she allege that it actually deters travel. As to the second and third components, Plaintiff makes no allegations which remotely suggest that the increased toll violates the right of

-9-

a citizen from another state to be treated as a welcome visitor in Ohio or the right of new Ohio residents to be treated like other Ohio residents.

In her opposition brief, Plaintiff does not argue that she has alleged facts from which the Court can infer that either of the three components of the right to travel are implicated in this case. Instead, Plaintiff argues that the increased toll violates the right to travel under the dormant Commerce Clause test from *Northwest Airlines*.[4] However, even if *Northwest Airlines* applies to Plaintiff's right to travel claim, the Court has already determined, as discussed above, that Plaintiff has failed to sufficiently allege that the increased toll fails this test.

Turning to Plaintiff's right to interstate travel claim under the Ohio Constitution, the Commission moves to dismiss this claim on the ground that no court has recognized a right to interstate travel under the Ohio Constitution. In her opposition brief, Plaintiff entirely fails to address this argument. Thus, based upon Plaintiff's failure to respond to this argument, Plaintiff is deemed to have abandoned this claim. *See Weatherby v. Fed. Express,* 454 F. App'x 480, 490 (6th Cir. 2012) (noting that a "[p]laintiff must... make some effort at argumentation or presentation of facts" and absent such effort, plaintiff's claims is deemed waived).

Accordingly, the Court dismisses Plaintiff's right to travel claim under the United States Constitution (Claim Four) and Ohio Constitution (Claim Five).

**3. Equal Protection Claim**

---

[4]Plaintiff cites, in support of her argument that the test set forth in *Northwest Airlines* applies to her right to travel claim, the Third Circuit's decision in *Wallach v. Brezenoff*, 930 F.2d 1070, 1072 (3d Cir. 1991) and the Second Circuit's decision in *Selevan v. New York Thruway Auth.,* 711 F.3d 253, 261. However, as the Commission points out, *Wallach* predates the controlling decisions in *Saenz* and *Bredsen.* As to the Second Circuit's opinion in *Selevan*, the Second Circuit did in fact recognize that the right to travel encompasses the three components set forth by the Supreme Court in *Saenz. Selevan,* 711 F.3d at 257.

In Claim Seven of the Complaint, Plaintiff brings an Equal Protection claim under the Fourteenth Amendment of the United States Constitution and the Ohio Constitution. In support of this claim, Plaintiff alleges that the increased toll violates the right to Equal Protection because it is "only imposed on Turnkpike users and [is] not imposed on others who benefit from the funds generated by the [increased toll]." (Comp. at ¶ 87). Equal Protection claims under the Ohio Constitution and the Fourteenth Amendment of the United States Constitution are governed by essentially the same standards. *Warren v. City of Athens, Ohio,* 411 F.3d 697, 704, n. 6 (6th Cir. 2005) (citation omitted).

"The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." *Doe v. Mich. Dept. of State Police,* 490 F.3d 491, 502 (6th Cir. 2007) (internal quotation marks and citation omitted). "If legislation neither burdens a fundamental constitutional right nor targets a suspect classification, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate government interest." *Olympic Arms v. Buckles,* 301 F.3d 384, 388 (6th Cir. 202). The Untied States Supreme Court has designated several classifications as suspect, including, classifications based on race, alienage, national origin, gender, or illegitimacy. *Doe,* 490 F.3d at 503. Here, Plaintiff alleges that the increased toll "single[s] out a discrete group, users of the Ohio Turnpike as opposed to all other drivers." (Comp. at ¶ 88). Thus, the increased toll does not burden a suspect classification, nor, as discussed above, does Plaintiff sufficiently allege that the increased toll amounts to the denial of a fundamental right.

A state action "will be considered constitutional under rational-basis review if there is any conceivable state of facts that could provide a rational basis for it." *Doe,* 490 F.3d at 503-

04 (internal quotation marks and citation omitted).  The rational-basis standard is "highly deferential; courts hold statues unconstitutional under this standard of review only in rare or exceptional circumstances." *Id.* at 501.  Here, the Complaint alleges that funds from the increased toll will be used for improvements on roads and other infrastructure projects, which is a legitimate governmental interest that survives rational-basis review.  *See Yerger v. Mass. Turnpike Auth.,* 395 Fed. Appx. 878, 884 (2010).

In her opposition brief, Plaintiff argues that because the increased toll constitutes a tax that is imposed on a discrete group instead of the general public, the increased toll violates her right to Equal Protection under federal and state law.  This Court need not determine whether the increased toll amounts to a tax.  As the Commission argues, even if Plaintiff is able to establish that the challenged tolls are actually taxes, her Equal Protection claim still fails.

Plaintiff's Equal Protection claim is based on the Ohio Court of Appeals' decision in *Bldg. Indus. Assn. of Cleveland & Suburban Ctys. v. Westlake,* 103 Ohio App. 3d 546, 548, 660 N.E. 2d 501 (8th Dist. 1995).   There, the court assessed the constitutionality of an impact fee charged upon real estate developers and purchasers of new construction, but not present residents, for a  parks-and-recreation facility.  The court held that the fee violated the Equal Protection Clause because there was "no requirement for annual mandatory matching funds, in the amount collected by the recreation fee, from the general fund." *Id.* at 554.  However, as Plaintiff concedes, the Ohio Supreme Court later held that "there is no requirement that an ordinance imposing an impact fee on developers of real estate must contain a matching funds provision to be deemed constitutional."  *Home Builders Ass'n & the Miami Valley v. Beavercreek,* 89 Ohio St.3d 121, 125, 729 N.E. 2d 349 (2000).  Thus, the court's holding in

*Westlake* does not require this Court to find that the increased toll violates the Equal Protection Clause.[56]

Accordingly, because the Court finds that the increased toll satisfies rational-basis scrutiny, Plaintiff's Equal Protection Claim (Claim Seven) is dismissed.

**4.  Unlawful Tax or User Fee Under Ohio Law**

Plaintiff's Sixth Claim for relief asserts that the increased toll constitutes an "Unlawful Tax or User Fee Under Ohio Law."  "When a case is removed from state to federal court on the basis of federal question jurisdiction, and subsequently federal claims are dropped from the case, leaving only state claims, a district court has broad discretion in deciding whether to remand the case to the state court." *Horen v. Board of Educ. of City of Toledo Pub. Sch. Dist.*, No. 3:06 CV 1635, 2006 WL 2711560, at *1 (N.D. Ohio Sep. 19, 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) and *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244 (6th Cir. 1996)).  See also  28 U.S.C. § 1367(c)(3) (the district court "may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction").

> [A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.  When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have*

---

[6] Plaintiff also argues that the increased toll "fails both prongs of the dual rational nexus test" from *Beavercreek.*  This test, however, relates to a claim for an illegal taking of property without justification under the Takings Clause, and, therefore, does not apply to Plaintiff's Equal Protection claim. *Beavercreek,* 89 Ohio St.3d at 126.  Furthermore, this test is satisfied by the transportation-related nexus between projects funded by the Infrastructure Program and the Ohio Turnpike, as required by R.C. 5537.18(A).

-13-

*dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

Here, since the federal claims in this case have been dismissed long before trial, only a single state-law claim remains, and discovery has not yet begun, the Court concludes that the balance of factors weigh strongly in favor of remanding this case to the state court for adjudication.

### III.  CONCLUSION

For the reasons discussed above, the Motion to Dismiss (**ECF No. 7**) is **GRANTED** in part.  The Court hereby **DISMISSES**  all of Plaintiff's Claims, except for Claim Six of the Complaint.  The Court hereby directs the Clerk of Court to **REMAND** Claim Six of the Complaint  to the Cuyahoga County Court of Common Pleas, from whence this case was removed.  Furthermore, Plaintiff's Motion to Remand Claim Six and Seven to state court (**ECF No. 11**) is **DENIED** as Moot.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster 8/25/15*
**Dan Aaron Polster**
**United States District Judge**